IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NICKOYAN WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | 9:05CV1086 |
| | ) | |
| v. | ) | |
| | ) | |
| D.D.S. B. DAWSON and P.A. | ) | MEMORANDUM OPINION |
| S. LIBERTY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

      This matter is before the Court on defendants' motion
to dismiss, or in the alternative, for summary judgment (Filing
No. 18), and plaintiff's response (Filing No. 21).  Having
carefully reviewed the motion and response, the briefs of the
parties, the evidentiary submissions and the applicable law, the
Court will grant defendants' motion.

I.  **STANDARD OF REVIEW**

    A.  **Motion to Dismiss**

      The Court must decide a motion to dismiss under Rule
12(b)(6), accepting all allegations in the complaint as true and
drawing all reasonable inferences in the plaintiff's favor.  *See
Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 89-90 (2d Cir.
2004).  In order to avoid dismissal, a plaintiff must do more
than plead mere "conclusory allegations or legal conclusions
masquerading as factual conclusions." *Gebhardt v. Allspect,
Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).  The point at
which "conclusory allegations" become valid pleadings lies where

the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation. *See, e.g., Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001). The Court must not dismiss, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). This principle is to be applied "with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Discount Bank*, 199 F.3d 99, 107 (2d Cir. 1999)(*quoting Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)). The Court considers the defendants' motion in light of the foregoing standard.

**B.   Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir. 2002)(*quoting Anderson,* 477 U.S. at 248).

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. *See, e.g.*, *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003)(*citing Anderson,* 477 U.S. at 255).  However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(emphasis omitted)(*quoting* Fed. R. Civ. P. 56(e))(citation omitted).  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)(citation omitted).  Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999)(citations omitted), *cert. denied*, 530 U.S. 1242 (2000).  In addition, "the 'mere existence of a scintilla of evidence' supporting the non-movant's case is . . .

-3-

insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.,* 315 F.3d 171, 175 (2d Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir. 1995)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). Thus, a party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir. 1996)(*citing Anderson,* 477 U.S. at 247-48). While the submissions of pro se litigants are liberally construed, *see, e.g.*, *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), the fact that the plaintiff is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* 2002 U.S. Dist. LEXIS 25166, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003)(citing cases).

## II. FACTS

Plaintiff Nickoyan Wallace ("Wallace") brings this action, which he labels as a *Bivens* action, claiming a violation

-4-

of his Eighth Amendment rights.  He was a federal inmate at the
Federal Correctional Facility at Ray Brook, New York ("FCI Ray
Brook"), in 2004 when the events at issue occurred (Complaint,
¶ 1).  On June 4, 2004, defendant D.D.S. B. Dawson ("Dawson") saw
Wallace at a dental sick call (Complaint, ¶ 5).  Dawson was
employed by the Commissioned Corps of the United States Public
Health Service ("PHS") (Dawson Declaration ("Dawson Dec."), ¶ 1).
Dawson has been employed by PHS since March, 1995, and has been
assigned as a Chief Dental Officer to the Federal Bureau of
Prisons since September, 1997.  *Id*.  Dawson was the Chief Dental
Officer at FCI Ray Brook at the relevant times.  *Id*. at ¶ 2.

On June 4, 2004, Wallace sought to have a cavity filled
in tooth #31-OB (Complaint, ¶ 5, Dawson Dec., ¶ 5).  Dawson
performed this procedure, filling the cavity (Complaint, ¶¶ 4-8).
During the course of the procedure a small cut on the inside of
Wallace's cheek (the buccal fat pad) occurred (Complaint, ¶ 6).
In addition, an air embolism occurred in this same buccal fat
pad, resulting in swelling (Complaint, ¶ 7).  Dawson informed
Wallace when this occurred and opined that it would resolve
itself in one to two weeks and no harm would result (Complaint,
¶ 7).  Dawson told Wallace that if he did experience any
problems, he should report to the dental sick call the following
Monday, June 7, 2004 (Filing No. 18-3, Ex. 2A ("Dental Records"),
p. 3).

Wallace alleges that over the next three weeks he suffered excruciating pain on the right side of his face, difficulty in opening his mouth to brush his teeth and eat and constant swelling that never abated (Complaint, ¶ 9). However, he did not seek medical attention until Monday, June 21, 2004, when he reporter to dental sick call seeking treatment. He was advised that Dawson was booked up and could not see plaintiff until June 24, 2004 (Complaint, ¶ 10). Wallace was scheduled for an appointment with Dawson for June 24, 2004 (Complaint, ¶ 11).

On June 24, 2004, an institutional lockdown occurred which prevented Wallace from keeping his appointment (Complaint, ¶ 11). Wallace asserts that he asked an officer to inform the medical staff that he needed assistance (Complaint, ¶ 12). The officer relayed the information and informed Wallace a medical staff member would be up to see him shortly (Complaint, ¶ 13). He alleges no medical staff member arrived (Complaint, ¶ 13).

The next day, Friday, June 25, 2004, Wallace asked the unit officer to call down to see if he could be seen since he had missed his previous day's appointment because of the lockdown (Complaint, ¶ 15). He was informed that the dentist was not in that day but his name and number were taken (Complaint, ¶ 17). Wallace went to work at 7:30 a.m. (Complaint, ¶ 18). At work he told his foreman about the pain in his face and informed him that he was going over to Health Services to try to be examined or get

something for his pain (Complaint, ¶ 19).  At Health Services, the receptionist recognized Wallace and informed him that he was already scheduled to see the dentist on Monday morning (Complaint, ¶ 20).  He asked for something for the pain and was told to return to the pill line (Complaint, ¶ 21).

Wallace returned to work (Complaint, ¶ 21).  Shortly before lunchtime, Wallace was informed that he could return to Health Services to pick up some pain killers (Complaint, ¶ 22).  At Health Services, Wallace was met by defendant S. Liberty ("Liberty"), a physician's assistant (Complaint, ¶ 24).  Liberty gave Wallace the pain medication sought but Wallace alleges that Liberty was rude, that he yelled at Wallace and slammed the door in his face after giving him his medication (Complaint, ¶¶ 24-25).  Liberty did not examine Wallace, but did note in Wallace's records that "Pt. showed up at pill line asking for Motrin.  Pt. seen by dentist on 6/4/04 and states face still swollen." (Filing No. 18-3, Ex. 2B, p. 2).

Wallace was seen by Dawson at 7:40 a.m.. on Monday, June 28, 2004 (Complaint, ¶ 29).  Dawson noted swelling on the right side of the mandible and a "whitish exudite" at the site of the burr cut on the inside of Wallace's cheek (Dental Records, p. 4).  Dawson diagnosed this as a right buccal space infection and prescribed antibiotics for the infection.  *Id*.  Later that day,

Dawson, after consulting with a colleague, decided to change his prescription for Wallace to a different antibiotic (Complaint, ¶ 36).  Wallace was given the new antibiotic and the original antibiotic was retrieved (Complaint, ¶ 36).

Dawson closely monitored Wallace's treatment, seeing him for followup visits and examinations on July 2, 19, 22, and 29, August 6, 20, and 26 and September 19th (Dental Records, p. 5-8).  At the August 20th visit, Dawson noted a lack of pain and swelling and that the lump in his cheek had totally resolved (Dental Records, p. 7).  Later, on September 16th, Wallace reported that the pain was gone and the infection totally resolved (Dental Records, p. 8).

Wallace fully exhausted all administrative remedies before filing this action on August 31, 2005, against Dawson and Liberty, seeking damages of $2,000,000 (Complaint, ¶ 39).

### III. DISCUSSION

A.   Dawson's Absolute Immunity

It is undisputed that Dawson is a dentist and a member of the Public Health Service.  Title 42, U.S.C. § 233(a) makes the Federal Tort Claims Act the exclusive remedy for "damage for personal injury . . . resulting from the performance of medical, surgical, dental or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment."  All of Wallace's

-8-

allegations related to Dawson arise from a cut to the inside of
Wallace's cheek, which occurred during a dental procedure
performed by Dawson, and the subsequent infection of this cut.
The claim arises while Dawson was acting within the scope of his
employment as a dentist and member of the Public Health Service.
Therefore, under § 233(a), Dawson is absolutely immune from suit
and his motion to dismiss will be granted.  *See Cuoco v.
Moritsugu*, 222 F.3d 99, 107-09 (2d Cir. 2000).

B.   P.A. Liberty

        In order to state an Eighth Amendment violation,
Wallace must allege that Liberty was deliberately indifferent to
a substantial risk of serious harm.  *See Farmer v. Brennan*, 511
U.S. 825, 828 (1994).  This requires proof that Wallace's
condition is objectively so serious that "a condition of urgency,
one that may produce death, degeneration, or extreme pain exists"
and also that Liberty was subjectively deliberately indifferent
to that condition.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d
Cir. 1996).  "The official must both be aware of the facts from
which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference."
*Farmer*, 511 U.S. at 837.

        In the absence of culpable recklessness, "mere medical
malpractice is not tantamount to deliberate indifference . . ."
*Cuoco*, 222 F.3d at 107.  The Second Circuit Court of Appeals has

-9-

stated that while "insufficient or improper medical treatment may, in aggravated cases, state a claim under 42 U.S.C. § 1983, we have also recognized that the conduct should be so harmful that it can properly be characterized as a 'barbarous act' that 'shocks the conscience.'" *United States v. McGinnis*, 429 F.2d 864, 866 (2d Cir. 1970).

Wallace alleges that Liberty failed to provide adequate medical care on June 25, 2004, when Liberty gave Wallace painkillers to hold him over the weekend but failed to examine or treat his infected cheek.  Instead, Wallace was not examined or treated for his infected cut, until he was seen by Dawson, two and one-half days later, on Monday June 28, 2004.  Wallace alleges that this denial and delay in treatment for his infection constituted "unnecessary and wanton infliction of pain."

Wallace's medical records contain a note written by Liberty on June 25, 2004, in which Liberty writes, "Pt. showed up at pill line asking for Motrin.  Pt. seen by dentist on 6/4/04 and states face still swollen." (Filing No. 18-3, Ex. 2B, p. 2).

When Wallace was seen by Dawson on June 28, 2004, Dawson noted swelling on the right side of the mandible and a "whitish exudite" at the site of the burr cut on the inside of Wallace's cheek (Filing No. 18-3, Ex. 2A, p.4).  Dawson diagnosed this as a right buccal space infection and prescribed antibiotics for the infection.  *Id.*

-10-

Thus, viewed in a light most favorable to Wallace, his claim against Liberty essentially alleges that Liberty's failure to examine and treat his swollen cheek on June 25th resulted in a two and one-half day delay in the diagnosis of his right buccal space infection and the start of treatment with antibiotics.  The infection was ultimately resolved and there is no evidence that the delay aggravated the infection.

Wallace fails to meet either prong of the deliberate indifference test.  First, objectively it is clear that Wallace's condition -- an infected cut on the inside of his cheek -- did not constitute "a condition of urgency, one that may produce death, degeneration, or extreme pain."  See *Hathaway*, 99 F.3d at 553.  Unlike cases where injuries demonstrate the requisite urgency leading to "death, degeneration or extreme pain," Wallace complained merely of a small cut on the inside of his cheek which became infected.  While undoubtedly painful, Wallace's injury did not make him completely dysfunctional.  Further, Liberty immediately provided pain medication when asked.  Thus, Wallace's injury  -- a delay in the start of antibiotic treatment of two and one-half days -- does not warrant Eighth Amendment protection under a deliberate indifference theory because the injury is not objectively serious enough to meet the first prong of a deliberate indifference analysis.

Even if the Court were to find that Wallace's injury was sufficiently serious to meet the objective prong, he must also evidence that Liberty was subjectively deliberately indifferent to that condition. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The record reflects that Liberty was aware that Wallace was requesting pain medication, that Wallace had been seen by the dentist three weeks earlier, and that Wallace's face was still swollen. In addition, Liberty knew that Wallace was already scheduled to see the dentist first thing Monday morning -- two and one-half days later. The Court concludes that Liberty was not subjectively deliberately indifferent to Wallace's condition. Accordingly, defendant's motion for summary judgment will be granted as to plaintiff's claim against Liberty. A separate order will be entered in accordance with this memorandum opinion.

DATED this 29th day of January, 2007.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-12-